IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RMG MEDIA, LLC,<br><br>      Plaintiff;<br><br>  v.<br><br>iBOATS, INC.,<br>GRACELOCK INDUSTRIES, INC.,<br>SEACOAST CAPITAL MANAGERS, LLC,<br>and JOHN DOE,<br><br>      Defendants. | Civil Action No. 20-cv-290-RGA |

<u>MEMORANDUM ORDER</u>

  Before me is Defendant Seacoast's motion to dismiss (D.I. 31) the sixth and seventh claims in Plaintiff RMG's First Amended Complaint (D.I. 24 at ¶¶ 115–38) and Defendant Gracelock's motion to dismiss (D.I. 37) the fourth and fifth claims in Plaintiff's First Amended Complaint (D.I. 24 at ¶¶ 91–114), both pursuant to FED. R. CIV. P. 12(b)(6). The matter has been fully briefed. (D.I. 33, 35, 39, 41, 46, 47). For the reasons set forth below, Defendants' motions are GRANTED.

**I. NATURE OF THE PROCEEDINGS**

  RMG originally filed this lawsuit against Defendants Seacoast and iBoats on February 27, 2020, alleging direct copyright infringement by Seacoast and iBoats as well as contributory copyright infringement and vicarious copyright infringement by Seacoast. (D.I. 1). RMG thereafter filed an amended complaint against Defendants Seacoast, iBoats, and Gracelock, and John Doe, alleging direct copyright infringement by iBoats and John Doe; contributory copyright

infringement by iBoats, Gracelock, and Seacoast; and vicarious copyright infringement by Gracelock and Seacoast. (D.I. 24). Defendants Seacoast and Gracelock move to dismiss RMG's claims of contributory copyright infringement and vicarious copyright infringement against them. (D.I. 31, 37).

## II. FACTUAL BACKGROUND

RMG alleges that it entered into a Master Services Agreement ("MSA") with Defendant iBoats on or about April 16, 2018, in which iBoats hired RMG to "perform certain services in connection with [iBoats'] Website." (D.I. 24 at ¶ 19). RMG and iBoats subsequently entered into additional project assignment agreements under the MSA "for certain software development services, DevOps services, and UI/UX services," on or about June 1, 2018. (*Id.* at ¶ 20). As part of these project assignments, RMG alleges it "wrote several new computer program modules and modified several pre-existing program modules" that were later incorporated into iBoats' Website. (*Id.* at ¶¶ 20–23). RMG registered six copyrights on the source code it wrote for modules developed as project assignments. (*Id.* at ¶ 24).

RMG further asserts that on or about July 1, 2019, iBoats defaulted its "payment obligations" for project assignments under the MSA but nevertheless "operated the Website at least until December 31, 2019," through which time "the Website source code incorporated exact copies or derivatives of the Modules." (*Id.* at ¶ 26, 28). RMG asserts that the terms of the MSA conditioned iBoats' authorized use of the modules on its full payment to Plaintiff. (*Id.* at ¶ 25). RMG further alleges that on or about December 31, 2019, iBoats transferred ownership of the Website to John Doe "without [RMG's] knowledge or permission." (D.I. 24 at ¶ 30). At the time of transfer—because it had defaulted its payment obligations—iBoats did not have a valid

license to RMG's registered works, nor had RMG provided permission or consent to authorize the transaction or third-party use of the Website. (*Id.* at ¶ 31).

Seacoast "or one of its affiliates" is an "investor" in Gracelock. (*Id*. at ¶ 6). Between October 26, 2018 and December 31, 2019, RMG alleges that Seacoast "supervised, advised, and/or managed iBoats' day-to-day communications with RMG regarding the development of the Modules for the Website and iBoats' payment delinquency." (*Id.* at ¶ 48; *see also* D.I. 24-1, Ex. D). Email communications between RMG and Seacoast employees show they were apprised of overdue invoices from RMG's work for iBoats by at least July 26, 2019. (D.I. 24-1, Ex. D). On or about August 30, 2019, RMG asserts it sent notice to iBoats about its "payment delinquency and copyright infringement," and that "iBoats communicated these notices to Seacoast." (D.I. 24 at ¶¶ 50–52).

Gracelock is the "parent company" of iBoats. (*Id*. at ¶ 4). RMG similarly alleges that defendant Gracelock had knowledge of notices RMG sent to iBoats on or about August 30, 2019, regarding outstanding payments through "shared executives with iBoats or through direct communication from iBoats." (*Id.* at ¶¶ 41–42). RMG also alleges that, like Seacoast, "in its advisory or supervisory role, Gracelock induced, caused, encouraged, or materially contributed to iBoats' decision to withhold payment of the delinquent amounts due to RMG." (*Id.* at ¶ 44). Additionally, RMG alleges that Gracelock, "by virtue of the Transaction and the transfer of the Website to John Doe . . . has induced, caused, encouraged, or materially contributed to John Doe's continued infringement of RMG's copyrights in the Registered Works." (*Id.* at ¶ 47).

## III. LEGAL STANDARDS

### A. Rule 12(b)(6) Standard

3

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2).  Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard.  A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). When considering a Rule 12(b)(6) motion, I may only consider "document[s] integral to or explicitly relied upon in the complaint," including "any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the Plaintiff's claims are based on the document." *In re Asbestos Prods. Liab. Litig.*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1993); *PBGC v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).  A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347.  That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is

liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. Contributory Copyright Infringement

An individual "may be held liable for contributory copyright infringement if the individual has "knowledge of the infringing activity" and "induces, causes, or materially contributes to the infringing activity of another." *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984).

### C. Vicarious Copyright Infringement

"To establish vicarious infringement, a plaintiff must prove that the defendant had (1) the right and ability to supervise or control the infringing activity; and (2) a direct financial interest in such activities." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 388 (3d Cir. 2016).

## IV. DISCUSSION

### A. Seacoast

#### 1. Contributory Copyright Infringement

Seacoast argues that RMG has failed to state a claim for contributory copyright infringement with respect to the direct copyright infringement of both iBoats and John Doe. (D.I. 33 at 6, 9). Seacoast first argues that the First Amended Complaint's ("FAC's") conclusory reference to Seacoast's alleged knowledge based on "notices" of defaulted payments by iBoats is insufficient to plead "knowledge of the infringing activity." (*Id.* at 6). Seacoast further asserts that the only "notice" the FAC specifically refers to is the August 30, 2019 letter from RMG to Seacoast. (*Id.*) (citing D.I. 24 at ¶ 50; *see* D.I. 32-1, Ex. 1). This letter, Seacoast argues, demands payments for outstanding invoices; "threaten[s] that RMG would suspend work on the Website"

5

if unpaid by September 9, 2019; and notes that RMG could "terminate the parties' contract if payment were not received by September 16." (D.I. 33 at 6). But the letter does not, Seacoast notes, mention "anything about copyrighted works that RMG claimed to own" or otherwise indicate that iBoats "was engaging in acts of copyright infringement by continuing to use the Website." (*Id.*). Seacoast maintains that the most the letter could have done is provide "notice of the RMG-i[B]oats payment dispute, not any copyright infringement on the part of i[B]oats." (*Id.* at 7).

Seacoast also argues that the FAC does not "plead facts bearing on the second essential element" of contributory infringement, namely that Seacoast induced, caused, or materially contributed to direct infringement by a third party. (*Id.* at 7–8). To the extent RMG does argue this point, Seacoast asserts that the lone reference to Seacoast's supervision of "day-to-day communications with RMG" regarding module development and outstanding payments is insufficient. (*Id.* at 8). The evidentiary basis for RMG's assertion here is the set of emails attached to the FAC. (*See* D.I. 24-1, Ex. D). Seacoast argues that these emails, which only indicate Seacoast was aware of iBoats' outstanding payments to RMG, do not show that any action by Seacoast induced, caused, or materially contributed to any act of direct infringement by iBoats. (D.I. 33 at 8). Because the FAC does not otherwise plead "specific facts that would, if proven, establish the knowing, direct assistance or encouragement of acts of infringement," Seacoast argues that RMG does not plead sufficiently detailed factual allegations to support its claims of contributory infringement. (*Id.* at 9).

RMG replies that Seacoast conceded the sufficiency of the FAC's allegations of its knowledge of the infringing activity in its Opening Brief when Seacoast acknowledged that paragraphs 50, 51, and 53 of the FAC "address the element of Seacoast's knowledge that is

essential to RMG's claim for contributory infringement as to i[B]oats." (D.I. 35 at 5). RMG also argues that the August 30, 2019 letter from RMG to iBoats discussing outstanding payment invoices is sufficient to "make Seacoast aware of copyright infringement." (*Id.*). Even if the letter does not use the words "copyright," "infringement," or "copyright infringement," RMG asserts that references to RMG's ability to "take all lawful actions to stop iBoats' unauthorized use of RMG's Work Product" for failure to pay the outstanding invoices are sufficient to show that Seacoast "knew or should have known that failure to pay would make iBoats liable for claims of copyright infringement regarding the unauthorized use of the Work Product." (*Id.* at 6).

RMG also asserts that it has plausibly alleged, "Seacoast authorized or assisted iBoats in its acts of direct infringement." (*Id.* at 7). RMG specifically points to an email "responding to a note that the iBoats' Board would be deciding on the payments issue" in which Ben Cao, a Seacoast employee, noted, "We will be meeting at the board level late Monday and update everyone on the next step after our meeting." (*Id.*). RMG argues that this renders plausible its allegation, "Seacoast had direct involvement in the decision not to pay the delinquent amounts." (*Id.*).

I agree with Seacoast that RMG has not pleaded factual allegations that can plausibly support its contributory infringement claims with regard to iBoats. Because this is a Rule 12(b)(6) motion, I take the well-pleaded allegations in the light most favorable to RMG and assume them to be true. *Twombly*, 550 U.S. at 558. I therefore consider to be true, as RMG asserts, that the August 30, 2019 letter from RMG to iBoats references RMG's right to stop any unauthorized use of its work product by iBoats, and in doing so, treats as plausible Seacoast's awareness of the possibility of copyright infringement if iBoats continued to use RMG's Work Product without paying. I also consider to be true that Seacoast employee Ben Cao's attendance

at the iBoats' board meeting while discussion of outstanding payments took place suggests that Seacoast had knowledge of the potential issue of copyright infringement. RMG has therefore provided sufficient factual basis to plausibly allege that Seacoast had knowledge of the infringing behavior.

RMG's proffered facts that Ben Cao's attendance at the board meeting, or Seacoast's general day-to-day involvement in iBoats' business, implicate its "direct involvement in the decision not to pay delinquent amounts" (D.I. 35 at 6), however, are insufficient to support the contention. RMG does not allege that Ben Cao, or any other Seacoast employee, actively suggested to iBoats that it proceed with unauthorized use of RMG's work product. Nor does RMG put forth any communications between Seacoast and iBoats that, on their face, even imply that Seacoast induced or otherwise contributed to iBoats' decision to continue unauthorized use. RMG simply asserts that "in its advisory or supervisory rule, Seacoast induced, caused, encouraged or materially contributed" to iBoats' alleged copyright infringement. (D.I. 24 at ¶ 53). Without additional factual support, this is a conclusory allegation that recites the "elements of the cause of action" and cannot be credited as a well-pleaded factual allegation. *Davis*, 765 F.3d at 241.

Nothing else in the FAC provides factual basis for RMG's allegation that Seacoast "induced, caused, encouraged, or materially contributed" to iBoats' alleged copyright infringement. RMG therefore fails to adequately plead its contributory infringement claim against Seacoast with regard to iBoats.

Seacoast separately argues that, with regard to the John Doe defendant, the FAC's assertion, "Seacoast knew or should have known that, upon transfer of the infringing Website to John Doe, John Doe would directly infringe the Registered Works," does not plead any facts to

support the assertion. (D.I. 33 at 10). No other facts, Seacoast maintains, are alleged in the FAC to support the contributory infringement claims against Seacoast involving John Doe. (*Id.*).

RMG replies that "Seacoast was involved in the unauthorized transfer of the Website to John Doe." (D.I. 35 at 3) (citing D.I. 24 at ¶ 56). RMG further argues that details about "what Seacoast specifically did during the transaction to transfer the Website to John Doe" are not required at this stage of litigation. (D.I. 35 at 8). Moreover, because Seacoast had a "supervisory or advisory role within iBoats that was related to the Website and the payment of delinquent amounts to RMG" (*id.* at 9–10) (citing D.I. 24 at ¶¶ 48–49; D.I. 24-1, Ex. D), RMG maintains there is sufficient to allege Seacoast's involvement in the "unauthorized transfer of the infringing website" and therefore to plausibly allege its contributory infringement.

I take the well-pleaded allegations in the light most favorable to RMG. As with the contributory infringement argument with regard to iBoats, however, RMG's arguments that Seacoast's "supervisory or advisory role" to iBoats, or its knowledge of the "unauthorized transfer" of the Website, do not provide sufficient factual basis to plausibly allege that Seacoast "induced, caused, encouraged, or materially contributed" to copyright infringement by John Doe. Moreover, while RMG argues that its pleading of contributory infringement is based on Seacoast's involvement in the unauthorized transfer of the website (D.I. 35 at 3), in the FAC itself, RMG does not say that. RMG alleges only that the sale of the website by iBoats and "transfer of the Website to John Doe" are sufficient to show material inducement (D.I. 24 at ¶ 56). Something more than the existence of the sale of the website by iBoats to John Doe is needed to plausibly allege that Seacoast materially induced copyright infringement.

Given the failure to plead sufficient factual basis to assert that Seacoast induced, caused, encouraged, or materially contributed to copyright infringement by iBoats or John Doe

9

defendant, RMG does not state a contributory infringement claim upon which relief may be granted against Seacoast.

### 2. Vicarious Copyright Infringement

Seacoast argues that RMG's allegation, "Seacoast had the legal right and the actual ability to supervise and control the infringing activity of iBoats," is a conclusory legal assertion. (D.I. 33 at 11). Seacoast also asserts that the fact that Seacoast was an investor in iBoats' parent company, Gracelock, does not provide sufficient basis for an allegation of vicarious infringement without showing that "Seacoast occupied any seats on Gracelock's board of directors or owned a controlling interest in Gracelock." (*Id.* at 11–12). Seacoast further maintains that it did not have "an obvious and direct financial interest" in iBoats' infringing activities. (*Id.* at 12–13).

RMG, on the other hand, argues that it specifically alleged Seacoast had a supervisory role in which it "managed iBoats' day-to-day communications with RMG regarding the development of the Modules for the Website and iBoats' payment delinquency." (D.I. 35 at 9) (citing D.I. 24 at ¶ 48). This allegation is further supported, RMG argues, by the fact that "at least one employee of Seacoast, if not more, was on iBoats' Board of Directors at the time and had the power to decide whether to pay the delinquent amounts." (D.I. 35 at 10–11) (citing D.I. 24-1, Ex. D). RMG also asserted that Seacoast had a "direct financial benefit" because iBoats' unauthorized transfer let Seacoast avoid "having to put up additional capital investment to pay RMG for the delinquent amount." (D.I. 24 at ¶ 54).

Seacoast replies that even if one of its employees is on iBoats' Board of Directors, RMG has nevertheless not provided factual basis to allege that the employee influenced any decision to pursue infringing activities. (D.I. 41 at 8). With regard to the "direct financial benefit" argument RMG raises, Seacoast replies that RMG never alleges that Seacoast was "under any obligation to

contribute any capital to i[B]oats, to say nothing of Gracelock, in which Seacoast actually invested." (*Id.* at 9).

I agree with Seacoast that RMG's factual allegations do not provide sufficient basis to plausibly assert vicarious infringement. Even considering the allegations in the light most favorable to RMG, without specific allegations that Seacoast's supervisory capacity extended to exercise authority over iBoats' decision to infringe, RMG cannot plausibly assert that Seacoast vicariously infringed. To do so, RMG would need to allege, for example, at least some factual basis for the assertion that Seacoast's employee on iBoats' board of directors affected or had sufficient authority to affect a decision to pursue infringing activity. Merely stating that the employee "had the power to decide whether to pay the delinquent amounts" (D.I. 35 at 10–11) as a member of the Board without providing auxiliary factual allegations amounts to a conclusory legal assertion that cannot provide plausible basis for RMG's claim of vicarious infringement. Usually, boards of directors have multiple directors, so an allegation that one director could operate the company is implausible.  Similarly, without pleading that Seacoast actually had a financial obligation regarding the delinquent payments, RMG cannot plausibly allege that Seacoast had a direct financial interest in the infringing activity.

I therefore find that RMG has not pleaded sufficient factual basis to plausibly support its claims of Seacoast's vicarious infringement as to iBoat's copyright infringement.

### B. Gracelock

#### 1. Contributory Copyright Infringement

In its Opening Brief, Gracelock asserts arguments substantively identical to those raised in Seacoast's motion to dismiss to argue that RMG failed to state a claim of contributory copyright infringement. (*See* D.I. 33 at 5–11, 39 at 5–8). RMG's responses to Gracelock are also

identical to RMG's responses to Seacoast, with one exception: RMG specifically asserts that Gracelock has a "supervisory or managing role" over iBoats because the companies have a parent-subsidiary relationship and share resources, including Mr. Besse, who is alleged to be both "the director" of iBoats and "a director or executive of Gracelock." (D.I. 46 at 10) (citing D.I. 24 at ¶¶ 37–40). Gracelock contends, "Mr. Besse's alleged dual roles in Gracelock and iBoats have no relevancy" to the factual basis for a contributory infringement claim without alleging that "Gracelock played a specific role in iBoats' infringing conduct" beyond "Mr. Besse's purported involvement in iBoats' business generally." (D.I. 47 at 1) (emphasis omitted).

      I take the facts in the light most favorable to RMG, and therefore treat as true that Mr. Besse is, as alleged, the director of iBoats and also a director or executive at Gracelock. I agree with Gracelock that Mr. Besse's employment at both iBoats and Gracelock, even in an executive position, does not provide factual basis to plausibly argue that Gracelock "induced, caused, encouraged, or materially contributed" to contributory infringement. First, RMG does not allege any factual basis to show that Mr. Besse was actually involved in the project assignment for iBoats' website. Second, just because Mr. Besse is concurrently employed as the director of iBoats and an executive at Gracelock, it does not necessarily follow that each of his decisions at iBoats—and perhaps more importantly, his decision in this context—are done at the inducement of Gracelock. This is true even if the decision were to benefit Gracelock. While Mr. Besse's employment at both iBoats and Gracelock might be sufficient factual basis to plausibly argue that Gracelock had knowledge of the infringing activity, it is certainly insufficient to plausibly support RMG's claim that Gracelock "induced, caused, encouraged, or materially contributed" to copyright infringement.

Because RMG's novel argument regarding Mr. Besse does not change the outcome of the contributory infringement analysis, and because all other arguments raised by both Gracelock and RMG are substantively identical to those discussed in Seacoast's motion to dismiss, I similarly find here that RMG has not pleaded sufficient factual basis to plausibly support its claims of Gracelock's contributory infringement as to iBoats' and John Doe's infringing activity.

### 2. Vicarious Copyright Infringement

Gracelock argues that RMG's vicarious copyright infringement claim is insufficiently pleaded because it has not shown that Gracelock had "the right and ability to supervise the infringing conduct" and "an obvious and direct financial interest in the exploitation of copyrighted materials." (D.I. 39 at 8). Gracelock specifically argues that RMG has not pleaded factual basis for actual control exerted by Gracelock over iBoats, without which the mere potential for control in a parent-subsidiary relationship is insufficient to show "right and ability to supervise the infringing conduct." (*Id.* at 8–9). According to Gracelock, RMG has only asserted conclusory allegations that Gracelock is "iBoats' parent company" and "has and continues to supervise, advise, and/or manage iBoats' finances as well as the development and maintenance of the Website, which utilized the Registered Works." (*Id.* at 9) (citing D.I. 24 at ¶ 37).

Gracelock also argues that RMG has not adequately alleged an "obvious and direct financial interest" in the "exploitation of the copyrighted materials." (D.I. 39 at 9). Gracelock specifically asserts that RMG's only relevant allegation—that Gracelock financially benefits from iBoats as its parent company (D.I. 24 ¶ at 45)—is insufficient to show that Gracelock has a "direct" financial interest that extends past its ownership of its subsidiary. (D.I. 39 at 9).

13

RMG replies that at this stage of litigation, it does not need to assert its claims with more specificity than it already has with regard to the parent-subsidiary relationship between Gracelock and iBoats. (D.I. 46 at 10). RMG also argues that its factual allegations are nevertheless sufficient because, "Gracelock, through at least its role as iBoats' parent company as well as its shared executives, was in a position to control iBoats' infringing activities." (*Id.* at 11).

RMG further argues that it has, in fact, alleged sufficient basis to show Gracelock has an "obvious and direct financial interest" in the infringing activity that goes beyond merely arguing that there is a parent-subsidiary relationship; because "Gracelock shares resources with iBoats" (*id.* at 11) (citing D.I. 24 at ¶ 39), any "benefits of iBoats' infringing acts can plausibly benefit Gracelock's relative share of the resources between the two companies" (D.I. 46 at 11).

Taking the allegations in the light most favorable to RMG, I agree with RMG that it has provided sufficient factual basis to show Gracelock has "the right and ability to supervise the infringing conduct." Although Gracelock's point is noted that the mere potential for control in a parent-subsidiary relationship may be insufficient in some cases to plead a claim, all that is required for the first element of vicarious copyright infringement is "the right and ability to supervise" any infringing activity. I take as true RMG's allegations that Mr. Besse is both director of iBoats and a director or executive at Gracelock and that Gracelock is iBoats' parent company.  I thus conclude that RMG has adequately pleaded that Gracelock has the "right and ability to supervise" any infringing activity through Mr. Besse should it choose to do so.

RMG does not, however, provide sufficient factual basis to allege that Gracelock has an "obvious and direct financial interest" in the infringing activity. Even accepting as well-pleaded that Gracelock and iBoats share resources, and that Gracelock would benefit from a greater share

of the resources between the two companies, RMG has not adequately pleaded that the infringing conduct would, in the first instance, affect Gracelock's finances at all because it has not alleged that Gracelock would be liable for iBoats' payment delinquency. Although RMG does allege that Gracelock and iBoats share resources with each other (D.I. 24 at ¶ 38), it provides as examples "employees or executives," rather than anything implicating finances. Nor does RMG allege elsewhere in the FAC any facts related to the financial dimensions of the parent-subsidiary relationship between Gracelock and iBoats. RMG has not, therefore, adequately pleaded its claim for vicarious infringement against Gracelock.

## V. CONCLUSION

For the reasons set forth above, Seacoast's motion to dismiss (D.I. 31) the sixth and seventh claims in Plaintiff's FAC (D.I. 24 at ¶¶ 115–38) and Defendant Gracelock's motion to dismiss (D.I. 37) the fourth and fifth claims in the FAC (D.I. 24 at ¶¶ 91–114), both pursuant to FED. R. CIV. P. 12(b)(6), are **GRANTED**. These claims are **DISMISSED** without prejudice.

IT IS SO ORDERED.

Entered this 31st day of March, 2021.

  /s/ Richard G. Andrews
United States District Judge